UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

AUBIN LANDRY, ET AL                                        CIVIL ACTION

VERSUS                                                     NO.  04-3290

COLUMBIA GULF TRANSMISSION COMPANY, ET AL                  SECTION  "N"  (5)

## ORDER AND REASONS

Presently before the Court is Plaintiffs' Motion for New Trial (Rec. Doc. No. 45). The Court construes this motion as one seeking reconsideration of the Court's March 27, 2007 ruling, which granted Defendants' Motion for Summary Judgment (Rec. Doc. No. 36). For the reasons stated herein, **IT IS ORDERED** that the motion is **GRANTED** to the extent that the Court (1) vacates its earlier ruling on the issue of the application of general maritime law to this dispute and (2) instructs the parties to supplement their briefs regarding this issue.

In granting summary judgment in Defendants' favor, the Court rejected Plaintiffs' argument that general maritime law applies to this dispute. Specifically, the Court was not convinced that the Columbia Gulf Transmission Company ("CGT") pipeline canal qualified as "navigable waters of the United States" at the time of Mr. Landry's alleged accident. Applying Louisiana law, the Court further found Defendants to be immune from liability under La. R.S.

1

9:2791. In their motion for new trial, Plaintiffs urge reconsideration of these rulings on certain specified grounds.

With respect to Defendants' immunity under La. R.S. 9:2791, Plaintiffs first argue that the business of Defendant Continental Land & Fur Co., Inc. ("Continental") is "principally for a commercial, recreational enterprise for profit." *See* La. R.S. 9:2791 (B). Plaintiffs also contend that Defendant CGT is not entitled to immunity because it does not have authority to allow persons in the pipeline canal for recreational or other purposes. The Court does not find either of Plaintiffs' arguments persuasive.

Regarding principal use, the premises on which the pipeline canal in question is located consists of 127,000 acres of undeveloped, rural marsh and wetlands owned by Continental. Although Continental permits certain recreational uses of its land, the affidavit of George Strain, Vice-President of Continental, represents that the land is primarily used for the exploration for and production of oil and gas.[1] Contrary to Plaintiffs' assertions, the mere fact of this tract being subject to 200-300 recreational leases is alone not sufficient to create a genuine issue of material fact relative to the principal use of the premises.

Relative to this determination, La. R.S. 9:2791 expressly provides that the limitation of liability is not affected by a lease for recreational purposes that may limit the use of the premises to persons other than the entire public. *See* La. R.S. 9:2791(D). Further, no evidence has been submitted suggesting that revenue from the recreational leases even approaches the amount of revenue generated by oil and gas exploration and production activities. To the contrary, the leases

---

[1] *See* Exhibit A to Defendants' Memorandum in Support of Motion for Summary Judgment (Rec. Doc. No. 36-3) at ¶3.

attached to Plaintiffs' memorandum reflect yearly rental rates of a little more than $1.00, or less, per acre.[2] In addition, although the trapping lease between Continental and Ellery Mayon grants a percentage of any trapping proceeds to Continental, or payment of $100, whichever is greater, as payment of annual rent,[3] there has been no evidence indicating that this provision generates trapping proceeds of any significance for Continental. Nor has there been evidence of any other sort, *e.g.*, allocation of company resources, creating a genuine issue of material fact regarding the principal use of the premises.

With respect to CGT's authority to allow persons in the pipeline canal, CGT maintains a pipeline (and the pipeline canal) on Continental's land by virtue of a permit granted by Continental.[4] Although the permit requires measures by CGT to "obstruct the use of the [the pipeline canal] by ordinary marine traffic," and requires that CGT use reasonable diligence in preventing trespassing, it does not command that CGT prohibit any and all persons from entering or using the canal.[5] In any event, Continental permits certain recreational uses of its land, and the referenced immunity statute, La. R.S. 9:2791, applies to an "owner, lessee, or occupant" of a premises. CGT certainly qualifies as a "lessor or occupant," and, undisputedly, does not use the pipeline canal "principally for a commercial, recreational enterprise for profit."

Additionally, no authority has been cited that, in the absence of "deliberate and

---

[2] *See* Exhibit F to Plaintiffs' Memorandum in Support of Motion for New Trial (Rec. Doc. No. 45-14).

[3] *See* Exhibit A-2 to Defendants' Memorandum in Support of Motion for Summary Judgment (Rec. Doc. No. 36-4).

[4] *See* Exhibit 1 to Plaintiffs' Opposition Memorandum to Defendants' Motion for Summary Judgment (Rec. Doc. No. 41-2).

[5] *Id.*

willful or malicious injury,"[6] would remove the protections of the immunity statute if, because of commercial, environmental, and/or safety concerns, the landowner requires measures preventing unrestricted public use of a particular portion of the premises, and those measures ultimately result in injury to persons or property. In fact, the statute provides that the limitation of liability . . . shall not be affected . . . by the posting of the premises so as to limit the use of the premises to persons other than the entire public." La. R.S. 9:2791(D). It also specifically contemplates that a hazardous condition causing harm may be one "created by the placement of structures or conduct of commercial activities on the premises." La. R.S. 9:2791(A). Thus, under the circumstances here, the Court has no basis for concluding that CGT, as a "lessor or occupant," is not entitled to the same protections as the landowner, Continental.[7]

Putting aside the issue of Defendants' immunity under Louisiana law, the Court's review of certain additional materials submitted with Plaintiffs' motion for new trial raises some concern about the Court's earlier determination that federal general maritime law does not apply to this dispute. In particular, the Court previously was not convinced that the CGT pipeline canal qualified as "navigable waters of the United States." The Court now has some uncertainty regarding the issue that will necessitate additional briefing by the parties.

To explain, the Court previously understood, based on the parties' summary judgment submissions, that commercial vessel traffic only could *cross* the pipeline canal at certain points

---

[6] *See* La. R.S. 9:2791 (B).

[7] In ruling on Defendants' motion for summary judgment, the Court found that, while a triable fact issue would exist with respect to ordinary negligence, the same was not true with respect to the exception from immunity for "deliberate and willful or malicious injury to persons or property." *See* La. R.S. 9:2791(B); *see also* Transcript of February 14, 2007 Hearing (Rec. Doc. No. 50) at 32. Plaintiffs' motion for new trial does not seek reconsideration of this determination.

where navigable waterways intersected the canal. Significantly, commercial travel *up and down* the canal itself, the Court understood, was prevented by the presence of concrete bulkheads running from one end of the canal to the other. Although Plaintiffs may not have intended to convey that message to the Court, neither Plaintiffs' opposition memorandum, or their attached exhibits, are particularly clear on this point.[8] Further, Defendants' reply brief, responding to Plaintiffs' navigability assertion, specifically states that a commercial vessel could not "travel up and down the canal over CGT's bulkheads."[9]

The memoranda that the parties have submitted in connection with the motion for new trial are not significantly different in their treatment of this issue from the summary judgment memoranda. Indeed, Defendants' opposition memorandum asserts: ". . . there is simply no evidence vessels have moved up and down the canal. That's because they can't."[10] Reviewing pages 24-47 and 82-84 of the Dwayne Crawford deposition transcript, together with Exhibit 1 to that deposition, however, reveals that two or three apparently navigable waterways, which ultimately access the Atchafalaya River, cross the pipeline canal. While this is not new information to the Court, the fact

---

[8] *See* Plaintiffs' Opposition Memorandum in Support of Motion for Summary Judgment at 10-12. Plaintiffs' summary judgment submission included deposition transcript excerpts rather than the entire transcript. With the motion for new trial, however, Plaintiffs included the deposition transcripts in their entirety. Deposition transcript excerpts are acceptable and preferred *if* they provide the Court with all necessary information. The excerpts provided by Plaintiffs, however, did not accomplish this. Certain of the submitted pages had important text "cut off." *See* Crawford Dep., Exhibit 8 to Plaintiffs' Opposition Memorandum in Support of Motion for Summary Judgment, pages 42-43 (Rec. Doc. 41-3). Also, significantly, Exhibit 1 to the deposition, and additional transcript pages explaining the information on that document, were not previously provided to the Court.

[9] *See* Defendants' Reply Memorandum in Support of Motion for Summary Judgment (Rec. Doc. No. 42) at 3.

[10] *See* Defendants' Memorandum in Opposition to Plaintiffs' Motion for New Trial (Rec. Doc. No 46) at 6.

that there apparently are *no* bulkheads between the accident site and these two or three navigable waterways is. In other words, reviewing these deposition pages together with Exhibit 1 suggests that a commercial vessel conceivably could travel into the canal from one intersecting, navigable waterway, proceed down the canal, and exit through another navigable waterway into, ultimately, the Atchafalaya River and the Gulf of Mexico.

The Court realizes that, as a practical matter, it is possible that few, if any, commercial vessels would desire to make the described voyage. Indeed, as Defendants point out, there apparently is no evidence that any commercial vessel has done so. Nevertheless, the relevant test of navigability, for purposes of establishing federal admiralty or maritime jurisdiction, is whether a waterway is actually used, *or susceptible of being used*, in its ordinary condition, alone or by uniting with other waters, as a continued highway for commerce with another state or foreign country. *See, e.g., Grubart v. Great Lakes Dredge and Dock Co.,* 513 U.S. 527, 530, 535, 115 S. Ct. 1043, 1046, 1049 (1995); *Sanders v. Placid Oil Co.*, 861 F.2d 1374, 1376-78 (5th Cir. 1988) (quoting *The Daniel Ball*, 77 U.S. (10 Wall.) 557, 563, 19 L. Ed. 999 (1871)); *Hardwick v. Pro-Line Boats, Inc.*, 895 F. Supp. 145,146-48 (S. D. Tex. 1995).

In stating the foregoing, the Court does not reverse its prior ruling regarding the applicability of general maritime law regarding this dispute. Rather, in an abundance of caution, the Court will vacate its prior ruling on that point and order supplemental briefing on the issue. The Court does this because it believes additional information from both Plaintiffs *and* Defendants regarding the material facts of this case and the applicable law is necessary for the Court to render a fully informed ruling. Additionally, because Plaintiffs' discussion of the "relationship with a traditional maritime activity" prong of the admiralty and maritime jurisdiction test appears to have

focused only on *Plaintiffs*' activity (frogging) at the time of the accident, rather than a *defendant's* general activity, the Court will likewise order supplemental briefing of this issue. *See Grubart v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 539-40, 115 S. Ct. 1043, 1051 (1995).

Accordingly, given the foregoing, **IT IS ORDERED** that:

1. Plaintiffs' Motion for New Trial (Rec. Doc. No. 45) is **GRANTED** to the extent that the Court (1) vacates its earlier ruling on the issue of the application of general maritime law to this dispute and (2) instructs the parties to supplement their memoranda regarding this issue;

2. The parties are to submit supplemental memoranda, as instructed herein, on or before Tuesday, November 6, 2007. Reply memoranda, if any, must be submitted, along with a motion for leave to file, on or before Tuesday, November 13, 2007.

The parties are strongly cautioned that the Court expects their supplemental submissions to be very clear and comprehensive, to provide a fair statement of the summary judgment evidence, and to cite, with particularity, the evidence and jurisprudence relied upon. Further, in citing jurisprudence and other authorities, the parties are to recognize that the appropriate test of "navigability" turns on the purpose for which that term is being employed. *See Kaiser Aetna v. United States*, 444 U.S. 164, 170-71, 100 S. Ct. 383, 389 (1979); *see also LeBlanc v. Cleveland*,

198 F.3d 353, 357-58 (2nd Cir. 1999); *Hardwick,* 895 F. Supp. at 146-48 (comparing and contrasting jurisdiction for Congressional regulatory purposes with a federal court's admiralty jurisdiction).

New Orleans, Louisiana, this __23rd__ day of October 2007.

_____
**KURT D. ENGELHARDT**
**United States District Judge**