UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| AUBIN LANDRY, ET AL | CIVIL ACTION |
| VERSUS | NO. 04-3290 |
| COLUMBIA GULF TRANSMISSION COMPANY, ET AL | SECTION "N" (5) |

## ORDER AND REASONS

This Court previously granted Plaintiffs' Motion for New Trial (Rec. Doc. 45) to the extent that the Court (1) vacated its earlier ruling on Defendants' Motion for Summary Judgment (Rec. Doc. 36) regarding the application of general maritime law to this dispute, and (2) instructed the parties to supplement their briefs regarding this issue. *See* Rec. Doc. 58. Since that time, the Court has carefully reviewed – several times – all of the parties' submissions and the relevant jurisprudence. For the reasons stated herein, the Court has admiralty jurisdiction over Plaintiffs' claims. Accordingly, **IT IS ORDERED** that the Court's prior summary judgment ruling relative to Defendants' immunity under Louisiana Revised Statute 9:2791 are **VACATED**. **IT IS FURTHER ORDERED** that the Motion for Summary Judgment (Rec. Doc. 36) filed by Defendants, Columbia Gulf Transmission Company ("Columbia Gulf") and Continental Land & Fur Co., Inc. ("Continental"), is **DENIED**.

1

Plaintiffs allege that they were injured when, during a nighttime, recreational "frogging" excursion, Aubin Landry's aluminum boat hit a concrete bulkhead located in Columbia Gulf's pipeline canal. Admiralty jurisdiction exists relative to tort claims when both a maritime location and a maritime connection are present. *Grubart v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534, 115 S. Ct. 1043, 1049 (1995). A "maritime location" exists when the tort occurred on navigable water, or when an injury suffered on land was caused by a vessel on navigable water. *Id.* at 534; 115 S. Ct. at 1049. A waterway is "navigable," for purposes of establishing federal admiralty or maritime jurisdiction, when it is actually used, *or is susceptible of being used*, in its ordinary condition, alone or by uniting with other waters, as a continued highway for commerce with another state or foreign country. *See, e.g., Grubart*, 513 U.S. at 530, 535, 115 S. Ct. at 1046, 1049; *Sanders v. Placid Oil Co.*, 861 F.2d 1374, 1376-78 (5th Cir. 1988) (quoting *The Daniel Ball*, 77 U.S. (10 Wall.) 557, 563, 19 L. Ed. 999 (1871)); *Hardwick v. Pro-Line Boats, Inc.*, 895 F. Supp. 145, 146-48 (S. D. Tex. 1995).

The "maritime connection" test asks whether the incident was of a sort with "a potentially disruptive impact on maritime commerce," and whether "the general character" of the "activity giving rise to the incident" shows a "substantial relationship to traditional maritime activity." *Grubart*, at 534, 538-42; 115 S. Ct. at 1049, 1050-52. The latter part of this inquiry focuses on whether "a tortfeasor's activity, commercial or noncommercial, on navigable waters is so closely related to activity traditionally subject to admiralty law that the reasons for applying special admiralty rules would apply in the suit at hand." *Id.* at 539-40; 115 S. Ct. at 1051.

2

Here, Defendants maintain that admiralty jurisdiction cannot exist over Plaintiffs' claims because the alleged injuries occurred in a privately owned, privately maintained pipeline canal that is blocked on one end by rocks and, on the other, by a concrete bulkhead. If the only relevant facts were these, as stated by Defendants, the Court would agree. That, however, is not the case. Significantly, the undisputed evidence submitted reveals that *two or three* navigable waterways open into the pipeline canal between the site of the accident (the bulkhead hit by Plaintiffs) and the next bulkhead to the west.[1] These waterways undisputedly are sufficiently large to allow at least certain types of commercial vessels to travel between the Columbia Gulf pipeline canal, the Atchafalaya River, and, ultimately, the Gulf of Mexico.

Indeed, the evidence submitted reflects that small commercial vessels – utilized by fur trappers, alligator hunters, and fishermen, as well as Defendants' personnel – have entered, and traveled through this portion of the pipeline canal, via one or more of these navigable waterways, with the knowledge of representatives of Columbia Gulf and Continental.[2] Despite this awareness,

---

[1] Exhibit 1 to the Dwayne Crawford deposition transcript that was attached to Plaintiffs' Motion for New Trial (Rec. Doc. 45), and which also is attached hereto, demonstrates this. The site of Plaintiffs' alleged allision with the Columbia Gulf bulkhead is labeled as #1. The next bulkhead to the west is labeled as #6. Two navigable waterways connected to Bayou Little Horn (which is connected to the Atchafayala River) that open into the pipeline canal are labeled as #2 and #5. *See* Deposition Testimony of Dwayne Crawford, Exhibit B to Plaintiffs' Motion for New Trial (Rec. Doc. 45) *passim*; *see also* Affidavit of Dwayne Crawford, (Rec. Doc. 69-3) at ¶¶ 6-7, which is Exhibit 1 to Defendant's Reply Memorandum (Rec. Doc. 68).

[2] *See* Deposition Transcripts of Nelson Kramer, Jr., Dwayne Crawford, and Daniel Spivey, Exhibits A, B, and C to Plaintiffs' Motion for New Trial (Rec. Doc. 45) *passim*. Certain of these persons, including Mr. Landry's father-in-law, Ellery Mayon, have hunting, trapping, and/or fishing leases granted by Continental. *See id.*

Defendants have not sought to prevent all such access, and particularly not with respect to Continental's lessees. Even more significant, Defendants previously authorized another pipeline company's tug, loaded barge, and work boats to access and travel a short distance along this portion of the Columbia Gulf pipeline canal for the purpose of installing a tap on the neighboring Gulf South pipeline.[3] Thus, the evidence reveals that this particular portion of the Columbia Gulf canal, with Defendants' knowledge and, at least in some circumstances, express permission, has been rendered "susceptible of being used, in its ordinary condition, by uniting with other waters, as a continued highway for commerce with another state or foreign country." Accordingly, under these particular and narrow circumstances, the Court finds the waters of a portion of a privately owned and privately maintained pipeline canal to be "navigable" for purposes of establishing federal admiralty subject matter jurisdiction.

The Court likewise concludes that the requisite "maritime connection" exists. Here, Defendants maintain a concrete obstruction to water flow and travel in its canal. Given that the portion of the canal located between the accident site and the nearest bulkhead to the west has been found to be navigable, for admiralty jurisdiction purposes, the Court finds that a vessel allision with this obstruction has "a potentially disruptive impact on maritime commerce." Similarly, Defendants' action, or alleged inaction, relative to ensuring the visibility, or other notice of this waterway obstruction, to mariners, has a substantial relationship to traditional maritime activity.

---

[3] *See* Exhibit 6 to Defendants' Supplemental Memorandum in Opposition to Motion for New Trial/Reconsideration (Rec. Doc. 61); *see also* Deposition Transcripts of Nelson Kramer, Jr., Dwayne Crawford, and Daniel Spivey, Exhibits A, B, and C to Plaintiffs' Motion for New Trial (Rec. Doc. 45) *passim*.

Lastly, Defendants urge this Court to apply the Louisiana recreational immunity statute, La. R.S. 9:2791, and the Louisiana criminal trespass statute, even if federal admiralty jurisdiction is found to exist. On the showing made, the Court is not convinced that application of either statute would not impermissibly impinge upon the federal interest in maintaining the uniformity of federal maritime law. Accordingly, the Court declines to dismiss Plaintiffs' claims against Defendants on this basis.

New Orleans, Louisiana, this 23rd day of November, 2009.

------------------------------------------------
KURT D. ENGELHARDT
**United States District Judge**

